### T. W. STANFORD v. THE STATE.

No. 8457.   Delivered Jan. 21, 1925.

**Whitecapping—Indictment—Held Insufficient.**

Appellant was convicted under Art. 1189, P. C., for the offense commonly called whitecapping." A motion to quash the indictment was presented, and a motion in arrest of judgment also filed. The objection raised goes to the meaning of the word "post," or "posted," in the act, and to the sufficiency of the charge that there was a posting of the regalia of the Ku Klux Klan. We are of the opinion that such allegation was too vague and indefinite to put appellant upon notice of what particular act he was charged with, and that the mere exhibiting of a Ku Klux regalia, to appellant would n~t come within the meaning of the offense denounced in said article.

Appeal from the District Court of Potter County.  Tried below before the Hon. Henry S. Bishop, Judge.

Appeal from a conviction of whitecapping; penalty, two years in the penitentiary.

The opinion states the case.

No brief filed for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—The conviction is for "whitecapping" under Art. 1189, P. C., with the punishment fixed at two years in the penitentiary.

The article in question reads:

"Any person who shall post any anonymous notice, or make any threats or signs, or skull and crossbones, or shall by any other method, post any character or style of notice or threat to do personal violence or injury to property on or near the premises of another, or who shall cause the same to be sent with the intention of interfering in any way with the right of such peison to occupy said premises, or to follow any

legitimate occupation, calling or profession, or with the intention of causing such person to abandon such premises, or precincts, or county, in which such person may reside, shall be deemed guilty of the offense of whitecapping, and, upon conviction therefor, shall be punished by confinement in the state penitentiary for any period of time not less than two years nor more than five years."

The indictment contained three counts. The second was dismissed by order of the court before proceeding to trial. The first and third were submitted to the jury and conviction was under the latter.

Omitting formal parts it charges that appellant:

"* * * did then and there unlawfully make and post threats and signs by then and there posting what is commonly known as the regalia and robes of the Knights of the Ku Klux Klan then and there consisting and being composed of a white robe and hood for the body and head of any person then wearing the same, to do personal violence to E. T. McDonald with the intention of causing the said E. T. McDonald to abandon the said County of Potter, in the State of Texas, in which said county and State the said E. T. McDonald then and there resided; * * *

A motion to quash addressed to the indictment generally was overruled. After conviction a motion in arrest of judgment attacking specially said third count was presented but not sustained. The substance of both motions is that the allegations are too vague, uncertain and indefinite to charge and do not charge an offense under the statute.

We have been favored with no brief either for the state or appellant. The only case in which the statute in question has been construed coming to our notice is Dunn v. State, 43 Texas Crim. Rep., 25, 63 S. W. 573, and the facts of that case are so dissimliar to those in the present instance as to give us little aid. The meaning of the word "post" in its usual acceptation is "to attach to a post, a wall, or other usual place of affixing public notices; to placard; as to *post* a notice; to *post* playbills; to advertise." (Webster's International Dictionary.) The statute would seem to provide: (a) that any person who posts any anonymous notice, or makes any threats or signs to do personal violence to another with intent to cause the latter to abandon his residence, etc., (b) or who by any other method *posts* any character or style of notice or threat to do personal violence to another with such intent, shall be guilty of whitecapping.

There is no allegation of any anonymous notice or threat being posted, but the regalia and robes of the Knights of the Ku Klux Klan are alleged to have been posted, which according to the pleader constituted as a matter of law "threats and signs" to do personal violence. The mere alleging that the "regalia and robes" of the Klan were "posted," in the absence of some explanatory averments, conveys no in-

formation to accused or to the court as to how such act constituted a "threat" or "sign" to do personal violence to McDonald.

Again, if it should be charged that a notice or sign or written threat was "posted" it would convey intelligence under the ordinary and usual meaning of "post" as to what had occurred, as was clear in the Dunn case (supra) where a coffin and scaffold with a man hanging thereon, were drawn with the words "Jim Owens went to Hell June 20th, 1900," Owens being the party to whom the notice was sent. But when it is charged that the thing "posted" were the regalia and robes of the Klan,—articles of wearing apparel not ordinarily associated with "post" in its usual meaning,—it left accused, and leaves this court, to speculate and wonder what was done with the "regalia and robes" that would support an allegation that they were "posted." Were they hung on the door knob, the wall of appellant's residence, or were they suspended from a tree in his yard? Who can tell from the indictment? When we go to the facts developed by the state it becomes even more apparent that no information was conveyed by the indictment as to what was relied on by the state to support its allegations. It appears that appellant was a member of the Klan; that on the night of the alleged offense he secured eight robes and hoods ostensibly to be used in a parade in a neighboring city. Instead of so using them he and six other persons,—without knowledge or authority of the Klan or its officers,—sought a conference with McDonald, at which he was by word of mouth threatened with personal violence unless he left Potter County within twenty-four hours. No personal violence was done him at this time. Appellant and his companions wore the robes and hoods at this conference. This constituted the alleged "posting of the regalia charged in the indictment.

The certainty required in indictments has so often been discussed a review of the subject is not called for. Many authorities are collated in Section 493 Branch's Ann. P. C., sustaining the principle that the indictment should apprise the defendant of the charge against him, and be sufficiently specific as to enable him to plead a judgment thereunder in bar of another prosecution; and in Section 494 is the further correct proposition that,—"It is not always sufficient to follow the language of the statute. There are cases that require greater particularity, either from the obvious intention of the Legislature or from the application of known principles of law,"—also supported by many collated cases.

The conduct of one who in disguise threatens personal violence to another is reprehensible whatever the purpose be, but the terms of the statute invoked in this case cannot be extended beyond its legitimate scope or proper construction to meet such a situation.

For the reasons already given the judgment must be reversed and the prosecution ordered dismissed.

*Dismissed.*