MORRISON, Chief of Police of Houston, v. HABEEB.

No. 12358.

Court of Civil Appeals of Texas. Galveston.

Jan. 24, 1952.

Rehearing Denied Feb. 28, 1952.

Will Sears, City Atty., Mayo J. Thompson, Asst. City Atty., of Houston, for appellant.

Henry J. Lamb, A. H. Krichamer, of Houston, for appellee.

CODY, Justice.

This suit was brought by appellee against the Chief of Police of the City of Houston to recover possession of a case containing a collection or assembly of assorted dice, both straight and crooked. The Chief of Police defended upon the ground that "the subject matter of this litigation being a gambling or gaming device per se, is a public nuisance and as such plaintiff herein has no property right to be adjudicated by this honorable court as a matter of public policy."

The court, trying the case without a jury, rendered judgment that appellee recover possession of the case of dice. Then, in response to appellant's request, filed conclusions of fact and law. Appellant has predicated his appeal upon two points which in effect present that the evidence was sufficient to compel the finding (1) that case of dice, consisting of straight and crooked dice, as assembled and collected, was a gambling device per se, and consequently required the conclusion (2) that, by force of P. C. Art. 634, appellee could have no property rights therein entitling him to judgment for the recovery thereof.

The evidence showed, and the court so found: that after appellee's automobile had been stolen in mid-January, 1951, it was recovered by the Police Department of the City of Houston; that when stolen and recovered, the case of dice in question was locked in the trunk compartment of appellee's automobile; that in checking up, the Police Department found the case of dice, and took same without the knowledge or consent of appellee; that appellant, Chief of Police, refused appellee's demand for the return of the case of dice; that the subject matter of this suit consists of the following:

8. * * *

"(a) 508 pairs of dice of assorted colors, sizes and dimensions.

"of these 508 pair, approximately half are 'crooked' dice, i. e. pairs of dice which were so constructed as to be capable of being fraudulently used to favor one gambler over another gambler in a gambling game using dice, if so used. Of this 508 pair, approximately half are 'straight' dice, i. e. pairs of dice which are relatively perfect cubes containing the original numbers or spots and not designed to fraudulently favor one gambler over another in a gambling game using dice, if so used. The entire 508 pair of dice are so designed that the crooked and straight dice are assembled in groups, corresponding in size and color so that for every pair of straight dice there is at least one, and usually more, corresponding pair of crooked dice which resemble the straight dice in appearance.

"(b) 9 odd dice, each of which is a single die without a mate.

"(c) A wooden case covered with black leatherette, containing the dice, and the emery cloth and wooden trays hereinafter referred to.

"(d) 5 wooden covered trays, each tray partitioned into compartments, each compartment sized to hold one pair of dice. The trays are marked: '5/8'; '1/2–5/8'; '11/16'; '9/16'; '11/16.'

"(e) 2 or 3 pieces of ordinary emery cloth."

That the subject matter of this suit, at the time appellant acquired possession of it was not being exhibited for gaming purposes, "12. That said dice as so assembled in the trays and case in the various combinations of crooked and straight dice could be best used in gambling games using dice. 13. That said dice as so assembled in the trays and in the various combinations of crooked and straight dice were capable of being used as gambling paraphernalia. 14. That the personal property in question is not a gambling or gaming device per se.

15. That the personal property in question is not a public nuisance."

The court concluded that, since the property in question is not declared by some statute of the State to be a gambling device per se, and was not being exhibited for gaming purposes at the time it came into appellant's possession, appellee was entitled to recover possession of the dice.

When appellee proved that he had bought the case of dice, he made out a prima facie case of his right to recover same. This, because the Legislature has never banned property rights in dice, but merely the betting on games played with dice. P.C. Art. 618. It is appellant's contention, however, that the case, with its contents as set up or assembled in trays, was as a matter of law "gaming paraphernalia or device of whatever kind or character" in which property rights are banned by P.C. Art. 634, reading, "Gambling house public nuisance—The existence of any gambling house * * * or bank or gaming paraphernalia or device of whatever kind or character, and all equipment of such gambling house, is hereby declared to be against public policy and a public nuisance. No suit shall be brought or maintained in any court in this State for the recovery of same or for any insurance thereon, or for damages by reason of any injury to, or for the destruction of same."

The Legislature did not define the "Gaming paraphernalia or device" which was by said Article made a nuisance. Certainly the Legislature did not intend by the enactment to make dice, merely because of being dice, a nuisance. No doubt, if evidence should show that specific dice constituted a part of the equipment of a gambling house, or if it should show that specific dice had been used to gamble with, such dice would be brought within the denunciation of the Article.

Here the court found that the dice as "assembled in the trays and in the various combinations of crooked and straight dice were capable of being used as gambling paraphernalia." That finding is wholly insufficient to constitute such dice as gaming paraphernalia per se. The court further found that the dice as "assembled in the trays and case in the various combinations of crooked and straight dice could be best used in gambling games using dice." That finding is likewise insufficient to brand the dice as gaming paraphernalia per se. Implicit in such finding is the conclusion that the dice in question could be used for some purpose other than gambling.

The evidence showed that appellee had paid out something like $500 for the case of dice, and the court found its value to be $400. The evidence raises a strong suspicion, and is sufficient to bear the inference that appellee intended to make the use of the dice for which the court found same were best suited. But an unconsummated intention to use certain specific property as "gaming paraphernalia or device" is not enough to make it property denounced by P.C. Art. 634 as a public nuisance. Since Art. 634 does not define "gaming paraphernalia or device," before specific dice can be shown to come within the statute, they must be shown either (1) to have been used for gaming, or (2) to have constituted a part of the equipment of a gambling house, or (3) to be a gaming device per se.

In other words, it was not enough for appellant to point out that the evidence shows a probable intention to use the dice in question so as to make them a public nuisance condemned by P.C. Art. 634. Intention to use property so as to constitute a public nuisance denounced by statute, not shown to have been consummated, was not enough. And the evidence considered in the light most favorable to appellant would show at most a probable intention to use the dice as a gaming device. It need hardly be pointed out that where the burden was on appellant to establish his affirmative defense, the evidence will be considered in the light most favorable to support the findings of fact. Indeed, the appellant pins his defense entirely to his contention that the case of dice, etc. was a gambling device per se. We are constrained to sustain the judgment.